488 P.2d 1008

The TRAVELERS INDEMNITY COMPANY,
Appellant and Cross-Appellee,

v.

Joe HUDSON and Edna Young, Appellees
and Cross-Appellants.

No. 1 CA–CIV 1385.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 20, 1971.

Rehearing Denied Oct. 21, 1971.

The relevant facts are as follows: Defendant-appellant Travelers Indemnity Company had issued a family automobile policy to James L. Norman, covering a 1958 Chevrolet which he owned.

This policy contained $10,000 limits and in addition to insuring a named 1958 Chevrolet, also insured Norman while driving non-owned automobiles provided the use of such non-owned automobile was with the permission of the owner.

On the weekend of March 16, 1963, a friend of Norman's by the name of Cooper, borrowed Norman's 1958 Chevrolet automobile for "the weekend". At the time he borrowed this automobile Cooper owned a 1955 Chevrolet which was inoperable, the battery being dead and the engine needing timing. This inoperable automobile was pushed into Norman's yard and left there, Cooper delivering the keys to this car to Norman, and driving away in the 1958 Chevrolet. At the time of this exchange, nothing was said concerning Norman's use of Cooper's car, such use neither being expressly prohibited nor agreed to. Cooper failed to return Norman's car as agreed, and Norman, the following weekend, anxious to keep a date with his fiancé put Cooper's car into running condition. Thereupon, Norman using the borrowed automobile, began a series of tavern stops that ultimately resulted in his driving the borrowed Cooper automobile into the plaintiffs' son, killing him. Within a few days after the accident, Norman was advised by Travelers that it denied coverage under Norman's policy for any claim against him arising out of this fatality. Thereafter, Joe Hudson and Edna Young, the plaintiff-appellee parents, brought suit against Norman to recover damages for the wrongful death of their son. Norman, through his personal attorney, tendered the defense of the action to Travelers, which declined to accept the defense of the suit. During the pendency of the action, plaintiffs offered to settle their claim for $10,000, that amount being the policy limits under Travelers' policy for in-

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellant and cross-appellee.

Richmond, Ajamie, Fay & Warner by Jack C. Warner, Phoenix, for appellees and cross-appellants.

JACOBSON, Presiding Judge.

This appeal is from an action adjudicating the rights of a judgment creditor against the motor liability insurer of a judgment debtor.

jury to or death of any one person. This offer was conveyed to Travelers, who declined to accept the offer, contending that the claim was excluded from coverage. The case went to trial, Norman being represented by his personal attorney, which resulted in plaintiffs obtaining a $25,000 judgment against Norman.

After obtaining this judgment, plaintiffs attempted to collect the same from Travelers by a garnishment proceeding. Travelers moved to dismiss this proceeding after plaintiffs served a tender of issues on the ground that tender combined a claim in tort with a debt. The Superior Court granted this motion, dismissing the garnishment. The order of dismissal failed to contain a statement in *haec verba* that the garnishment was dismissed "without prejudice". No appeal had been taken from the dismissal. Subsequently, plaintiffs purchased Norman's claim against Travelers under his Family Automobile Policy for $10,000.00. The instant action was commenced to enforce the rights obtained under this assignment. From a judgment in plaintiffs' favor for the sum of $15,000 plus costs and interest, Travelers has appealed. A cross appeal has also been filed by plaintiffs.

Travelers' contentions on appeal are: (1) the instant suit was barred by the dismissal of the prior garnishment proceeding plaintiffs had instituted against Travelers; (2) the evidence was insufficient to support a jury finding that Norman, the insured-assignor, was operating the automobile in question with the permission of its owner; (3) coverage was excluded under the policy because the owner of the automobile furnished the same to Norman for his "regular use"; (4) the court erred in refusing to give Travelers' requested jury instructions and (5) the verdict improperly exceeded the policy liability limit. The plaintiffs-assignees' cross appeal contends that the court erred in awarding Travelers a $10,000 credit against the $25,000 judgment plaintiffs obtained against Norman in the wrongful death action, and that the

court erred in directing a verdict in favor of Travelers on plaintiffs' theory that Travelers failed to exercise good faith toward its insured, Norman, when it refused to settle within policy limits the claim plaintiffs asserted against Norman.

Travelers initially contends that the omission in the order of dismissal of the garnishment proceeding of the recital that the same was being dismissed "without prejudice" barred the commencement of this suit pursuant to Rule 41(b), Rules of Civil Procedure, 16 A.R.S. This rule provides, insofar as is pertinent:

"If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). *Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.*" (Emphasis added.)

■ In this regard, Travelers relies upon Anguiano v. Transcontinental Bus System, 76 Ariz. 246, 263 P.2d 305 (1954), holding that Rule 41(b) uses "plain, clear, simple, unequivocal language, and says an involuntary dismissal other than for lack of jurisdiction or for improper venue operates as an adjudication upon the merits *unless the court otherwise directs.*" (Emphasis supplied). 76 Ariz. at 250, 263 P.2d at 308. This decision was reaffirmed in Fovargue v. Singer, 77 Ariz. 305, 270 P.2d 1090 (1954). However, in the case at bar the court's order of dismissal *did otherwise* specify that the dismissal was to be other than on the merits by explicitly reciting therein as the ground for the dismissal that plaintiffs' "Tender of Issue combined a claim in tort against the garnishee defendant." Rule 41(b) does not require that the trial court use prescribed words, such as "without prejudice", to denote that the order of dismissal is without prejudice, the rule merely requiring "the court in its or-

der for dismissal otherwise specif[y]" that the dismissal was not an adjudication upon the merits. This the Superior Court did, by giving as the ground therefor the improper joinder of claims. This ruling is obviously not an adjudication upon the merits. We therefore hold that the dismissal of the prior garnishment suit did not operate as an adjudication on the merits, and that plaintiffs were not barred by that dismissal from bringing this action.

■ Travelers next contends that the jury finding that its insurer had Cooper's permission to drive the automobile was not supported by reasonable evidence. This contention arises from the non-owner provision in the Family Automobile Policy which extends coverage as follows:

> "(b) *With respect to a non-owned automobile,*
>
> "(1) *the named insured,*
>
> "(2) any relative, but only with respect to a private passenger automobile or trailer,
>
> *provided the actual use thereof is with the permission of the owner * * *.*" (Emphasis supplied.)

In this regard, Norman testified that he had not received express permission to use Cooper's automobile in Cooper's absence. However, neither was Norman expressly prohibited the use thereof. The evidence was that Norman and Cooper were close friends. Norman on at least one other occasion had lent Cooper the use of his car. On the occasion in question, Cooper left his car in Norman's yard and gave Norman his keys thereto. The jury could have concluded that Cooper's failure to return Norman's car at the time agreed upon was based in part on leaving Norman with transportation in the form of the Cooper automobile. We agree with the plaintiffs that the relationship between the parties, together with the attendant facts concerning the mutual bailments here involved, raised a jury question of whether Norman's use of Cooper's car was with his permission. Moreover, from these facts, a jury could conclude that Cooper assented to Norman's putting his car into operable condition and by leaving the keys with him assented to his using the automobile in Cooper's absence. *See,* Lumbermens Mutual Casualty Co. v. Poths, 104 Ill.App.2d 80, 243 N.E.2d 40 (1968); Hinton v. Indemnity Ins. Co. of North America, 175 Va. 205, 8 S.E.2d 279 (1940).

■ Travelers next contends that a jury finding of implied permission necessarily includes therein a finding that the automobile was furnished to Norman for his "regular use" and therefore coverage was excluded under the policy provision defining a non-owned automobile as one not "furnished for the regular use of either the named insured or any relative." In its opening brief, Travelers argued that if permission could be implied from Cooper's conduct "then it must follow there was permission to use the automobile for all purposes and at all times, for, having once established the permission, there is nothing to limit it." The phrase "regular use" is undefined in the policy. However, the term denotes continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use. Eureka-Security Fire & Marine Ins. Co. v. Simon, 1 Ariz.App. 274, 401 P.2d 759 (1965); Safeco Ins. Co. of America v. Thomas, 244 Cal.App.2d 204, 52 Cal.Rptr. 910 (1966). Cooper returned Norman's car approximately one week after borrowing it. The bailment was originally intended to last one two-day weekend, Cooper promising to return Norman's car the following Monday. When Cooper did not return as promised Norman rode to work with fellow employees for the next five days. The only time Norman used Cooper's car was on the night of the fatality, and then to keep a date with this fiancé. Additionally, to use the car, Norman first had to repair it and a jury could have inferred from this fact that while the con-

duct of the parties contemplated Norman's use of Cooper's car, Norman would only put himself through the inconvenience of putting the car into a running condition if he believed an unusual circumstance required his immediate use of the car. Considering the totality of the circumstances, we cannot say that a jury was required to find that Cooper's car was furnished to Norman for his regular use under the ordinary meaning of that phrase.

Travelers next contends that the court erred in rejecting its proferred jury instructions and committed error in Instruction No. 2 by neglecting to advise the jury on the effect to be given the determination of whether Norman drove Cooper's automobile with permission, and whether Cooper's automobile was a non-owned automobile as defined in the subject policy of insurance. Court Instruction No. 2 as given states:

"I have now given you the law and defined the various terms used in these instructions. You are now to make the following determinations.

"First, you will determine whether the automobile that was driven by Larry Norman at the time of the accident was being driven with the express or implied permission of its owner, Denny Cooper.

"Second, you will determine whether or not the automobile involved in the accident was a 'non-owned automobile' as defined in the subject policy of insurance.

"If you determine each of these issues in favor of the Plaintiffs, then you should return a verdict for Plaintiffs in the sum of $21,549.00.

"If you determine either of these issues in favor of the Defendant, then your verdict should be for the Defendant."

It is our view that after four volumes of trial transcript, many pages of which dealt expressly with the significance of such findings, the jury was well in-

formed as to the effect the determination of these factual questions would have, and we believe that Travelers cannot now seriously contend that the jury may have found that Cooper's car was not being driven by Norman with permission, or that the car was furnished to Norman for his regular use and then believed such a finding was favorable to the plaintiffs' case. In fact the instruction itself is capable of being interpreted to mean that if the jury finds either of these conditions missing their verdict was to be for the defendant. Moreover, as to Instruction No. 2, Travelers objected solely on the issue of damages, successfully urging upon the court that the jury be directed to return a sum to be specified therein as damages should the jury determine the factual questions raised in the instruction in favor of the plaintiffs. No objection was raised to the instruction concerning the alleged confusion contained therein as now urged on appeal. In determining on appeal the correctness of jury instructions, we are limited to the grounds raised in the objection thereto. Tucker v. Collar, 79 Ariz. 141, 285 P.2d 178 (1955). Where the objection to an instruction in the trial court is on a different basis from that urged on appeal, we will not reverse for other error in such an instruction. State v. Fassler, 7 Ariz. App. 248, 438 P.2d 317, vacated on other grounds, 103 Ariz. 511, 446 P.2d 454 (1968). City of Tucson v. La Forge, 8 Ariz.App. 413, 446 P.2d 692 (1968). Rule 51(a), Rules of Civil Procedure, 16 A.R.S. Travelers' objection being adopted by the court in the instruction given, Travelers may not now complain of any other alleged error contained therein.

Nor can we sustain Travelers' contention that the court erred in rejecting its proffered instructions, the substance of the requested instructions either being covered by the instructions given, or misstatements of the law. It is well established that the charge to the jury is to be considered as a whole, and where the substance of a requested instruction has been covered

by instructions given, it is not error to refuse to give the requested instructions. Rhodes v. El Rancho Markets, 9 Ariz.App. 576, 454 P.2d 1016 (1969).

Travelers' last contention, that the jury verdict improperly exceeded the policy limits, and plaintiffs' contentions on cross appeal are so related that we shall consider them together. Pursuant to the court's direction concerning damages, the jury returned a verdict for plaintiffs in the sum of $21,549.00. In arriving at the figure, the court started with the $25,000 judgment plaintiffs obtained against Norman in the wrongful death action, deducted the $10,000 the plaintiffs paid to purchase Norman's claim against Travelers, and then added interest and other costs thereon. Travelers contends that its maximum liability is prescribed by the $10,000 policy limit plus interest and costs, so that the jury verdict should have been for $16,549 rather than $21,549. Plaintiffs' cross appeal contends that the verdict should have been for the full $25,000 judgment obtained against Travelers' insured, plus interest and costs thereon.

 We agree with Travelers that based on the issues submitted to the jury, the jury verdict should have been limited to the $10,000 policy limit, plus interest and costs. However, we believe that the court erred in excluding the issue of Travelers' bad faith in not settling the wrongful death claim against its insured within policy limits. We believe that the evidence concerning Travelers' hasty conclusion of non-coverage, based upon a sketchy investigation of the claim, together with the fact that it was confronted with certain liability if there was coverage, was sufficient to allow a jury to determine whether Travelers acted in bad faith in refusing to settle the claim. General Accident Fire & Life Assur. Corp. v. Little, 103 Ariz. 435, 439, 443 P.2d 690, 694 (1968). Our Supreme Court has held that the bad faith of an insurance carrier in failing to settle a claim within policy limits exposes the carrier to the full liability of a judgment thereafter obtained. General Accident Fire & Life Assur. Corp., *supra*; Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404 (1957). Under this rule, if plaintiffs on remand prove Travelers was guilty of bad faith, they would be entitled to recover the full $25,000 judgment obtained against Travelers' insured, plus interest and costs thereon. Moreover, such recovery would not be subject to any credit on the amount of the purchase price of the claim. The purchase price of the claim can in no way diminish Travelers' liability on the judgment, and a credit in the amount of the purchase price is therefore unjustified. We have recently considered and rejected an analogous contention in the Aetna Casualty & Surety Company v. The Valley National Bank of Arizona, 15 Ariz.App. 13, 485 P.2d 837 (1971). *Cf.* Farmers Insurance Exchange, *supra*.

For the foregoing reasons this matter is reversed and remanded for a new trial solely on the issue of defendant's bad faith in refusing to settle plaintiffs' claim within policy limits. If the finder of fact determines Travelers acted in bad faith, judgment shall be entered against it for $25,000 plus those costs and interest found herein together with accruing costs and interest. If the finder of fact determines Travelers acted in good faith, judgment should be entered against it for $10,000 plus the same costs and interest and accruals.

HAIRE and EUBANK, JJ.