NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY v. MELINDA BAREFOOT WARREN AND CATHERINE POPKIN

No. 307PA89

(Filed 5 April 1990)

**Insurance § 85 (NCI3d) — automobile insurance — medical resident — nonowned vehicle not furnished for regular use — exclusion from policy**

A state-owned van driven daily by a medical resident between East Carolina University in Greenville and Wayne County Memorial Hospital in Goldsboro, where she was on an eight-week rotation, was "furnished for [her] regular use" within the meaning of her automobile insurance policy with plaintiff insurer, thus excluding it from liability coverage.

**Am Jur 2d, Automobile Insurance § 244.**

Justice MARTIN dissenting.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 94 N.C. App. 591, 380 S.E.2d 790 (1989), which affirmed summary judgment entered for defendants by *Reid, Jr., J.*, at the 7 August 1987 Civil Session of Superior Court, PITT County. Heard in the Supreme Court 14 March 1990.

*Baker, Jenkins & Jones, P.A., by Ronald G. Baker and Robert E. Ruegger, for plaintiff-appellant.*

*Henderson, Baxter & Alford, P.A., by B. Hunt Baxter, Jr., for defendant-appellee Warren.*

*Law Offices of Marvin Blount, Jr., by Marvin Blount, Jr. and Albert Charles Ellis, for defendant-appellee Popkin.*

N.C. FARM BUREAU MUTUAL INS. CO. v. WARREN

[326 N.C. 444 (1990)]

WHICHARD, Justice.

The single question in this declaratory judgment action is whether a state-owned van driven daily by a medical resident between East Carolina University in Greenville and Wayne County Memorial Hospital in Goldsboro, where she was on an eight-week rotation, was "furnished for [her] regular use" within the meaning of her automobile insurance policy with plaintiff insurer, thus excluding it from liability coverage. The trial court denied plaintiff insurer's motion for summary judgment and allowed that of defendants, the medical resident and her passenger, a medical student. Holding that such use was not "regular" for purposes of the policy's exclusion from coverage, the Court of Appeals affirmed. *N.C. Farm Bureau Mutual Ins. Co. v. Warren*, 94 N.C. App. 591, 380 S.E.2d 790 (1989). We allowed discretionary review on 5 October 1989. We now reverse the Court of Appeals.

The pleadings, depositions, and affidavits before the trial court on the parties' motions for summary judgment established the following facts:

On 29 January 1985 an accident occurred involving a van driven by defendant Melinda Barefoot Warren, a medical resident at East Carolina University. Catherine Popkin, a medical student at East Carolina University and a passenger in the van, was injured. The van was owned by the East Area Health Education Agency and had been furnished to Dr. Warren in order for her to drive to and from Wayne County Memorial Hospital in Goldsboro for an eight-week rotation. The rotation, which had begun about the first of January, required that Dr. Warren go to Wayne County Memorial Hospital five to seven times a week. Dr. Warren's use of the vehicle included driving various East Carolina University medical students, who were on two-week rotations in the same hospital, to and from Goldsboro, but she was not permitted to use the van for personal business or pleasure. Although Dr. Warren retained the keys to the vehicle for the three- or four-week interval of the rotation preceding the accident, and although she habitually kept the van in her driveway overnight between trips to Goldsboro, occasionally a medical student would drive the van and Dr. Warren would ride with another. On such occasions the medical student would return the van to Dr. Warren's driveway at the day's end. When Dr. Warren was on call in Goldsboro, she would keep the vehicle there overnight. In her deposition Ms. Popkin stated that transpor-

tation to and from hospitals at which medical students had scheduled rotations "was always made available to residents and medical students who had to do rotations at . . . hospitals other than . . . Pitt County Memorial Hospital."

Dr. Warren and her husband were the named insureds on a policy of automobile liability insurance with plaintiff insurer. The policy provided that the insurer would "pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident," and that it would settle or defend any claim asking for these damages from the insured. Among the listed exclusions was the following:

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle, other than your covered auto, which is

a. owned by you; or

b. furnished for your regular use.

The meaning of "regular use" is not included among the policy's definitions, nor is the term defined in the Motor Vehicle Safety-Responsibility Act of 1953, N.C.G.S. §§ 20-279.1 to 20-279.39 (1989). Indeed, this Court has recognized that "[n]o absolute definition can be established for the term 'furnished for regular use.' Each case must be decided on its own facts and circumstances." *Whaley v. Insurance Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496-97 (1963) (quoting *Home Insurance Company v. Kennedy*, 2 Storey 42, 152 A.2d 115 (Del. Super. 1959)). Accordingly, the definition stated in each case construing this policy phrase has depended upon the particular facts of that case. Their facts have tended to cause such cases to fall into two general groups. In the first class of cases the driver is an employee who was using an employer-provided vehicle for personal business or pleasure, with or without the employer's permission. *See, e.g., Whaley v. Insurance Co.*, 259 N.C. 545, 131 S.E.2d 491 (frequent personal use, without permission, is "regular use"); *Whisnant v. Insurance Co.*, 264 N.C. 195, 141 S.E.2d 268 (1965) (isolated, casual, unauthorized use in an emergency not an occasion upon which vehicle "furnished for regular use"). *See also Insurance Co. v. Bullock*, 21 N.C. App. 208, 203 S.E.2d 650 (1974) (non-employee driver, but frequent, permissive, personal use is "regular use"). In these cases the courts consistently stated that whether a vehicle is for a driver's regular use is to be deter-

mined by both its availability and the frequency of its use. *Whisnant v. Insurance Co.*, 264 N.C. at 198, 141 S.E.2d at 270; *Whaley v. Insurance Co.*, 259 N.C. at 554, 131 S.E.2d at 498; *Insurance Co. v. Bullock*, 21 N.C. App. at 210, 203 S.E.2d at 652. *See also Jenkins v. Aetna Casualty and Surety Co.*, 324 N.C. 394, 401, 378 S.E.2d 773, 778 (1989).

In the second class of cases a vehicle has been purchased and handed over to the purchaser, but there has been no transfer of the certificate of title, the statutory requisite for a vehicle to be "owned" within the meaning of the law. *See* N.C.G.S. § 20-4.01 (26) (1989). In these cases, again, the availability for use and the frequency of the driver's use of the car have been analyzed in determining whether that use has been "regular." *See, e.g., Jenkins v. Aetna Casualty and Surety Co.*, 324 N.C. 394, 378 S.E.2d 773 (car possessed for two years prior to accident, but unfit for "regular use," thus not within exception); *Gaddy v. Insurance Co. and Ramsey v. Insurance Co.*, 32 N.C. App. 714, 233 S.E.2d 613 (1977) (where certificate of title held by another and insured has unrestricted use and possession of vehicle, it is "furnished for the regular use of" the insured driver); *Devine v. Casualty & Surety Co.*, 19 N.C. App. 198, 198 S.E.2d 471 (1973) (continuous possession for regular use without restrictions constitutes "regular use"). *See also Indiana Lumbermens Ins. Co. v. Unigard Indemnity Co.*, 76 N.C. App. 88, 331 S.E.2d 741, *cert. denied*, 314 N.C. 666, 335 S.E.2d 494 (1985) (vehicle "furnished for regular use" and not entitled to coverage as "non-owned" car where father held certificate of title but gave son possession and permissive, non-restricted use of vehicle).

Unlike the many fact variations to which the definition of "furnished for regular use" has had to be applied in prior cases, the facts in the case before us do not require a specialized definition. The driver in this case was operating a vehicle owned not by her, but by the Eastern Area Health Education Agency. As it customarily did for other residents and students with rotations at hospitals in other counties, the agency had put the van at the driver's disposal for the eight-week period of her rotation at Wayne County Memorial Hospital. Her use of the van was to make scheduled, virtually daily trips. This pattern of use accords with one typical, dictionary definition of "regular": "steady or uniform . . . in practice or occurrence; . . . returning or recurring at stated or fixed times or uniform intervals." *Webster's International Dictionary of the English Language* 2099 (2d ed. 1950). Under the

facts and circumstances of this case, for Dr. Warren's use of the van to have been "regular," it was not necessary that the van's availability be exclusive or permanent. *Cf. Insurance Co. v. Bullock*, 21 N.C. App. at 210, 203 S.E.2d at 651-52. Nor, under the facts and circumstances of this case, was it necessary for her use of the van to be full and unrestricted, a critical fact in cases in which an employee uses an employer's vehicle for personal business, but one irrelevant here. *Compare Whaley v. Insurance Co.*, 259 N.C. 545, 131 S.E.2d 491, *with Whisnant v. Insurance Co.*, 264 N.C. 195, 141 S.E.2d 268. We hold that a van made available on a recurring basis at virtually daily intervals for a period of some weeks also fits the definition of "furnished for regular use," and that this use fell squarely within the list of exclusions stated in Dr. Warren's liability policy with plaintiff insurer.

We accordingly reverse the decision of the Court of Appeals and remand this case to that court for its further remand to the Superior Court, Pitt County, to strike summary judgment entered for the defendants and to enter summary judgment instead for the plaintiff.

Reversed and remanded.

Justice MARTIN dissenting.

Believing as I do that the majority has failed to properly interpret and apply the policy exclusion under consideration, I respectfully dissent.

At the outset it is settled law in this jurisdiction that exclusions contained in liability policies of insurance are to be construed against the insurer. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E.2d 894 (1978). This Court has adopted a two-prong test to determine whether a non-owned vehicle is furnished to the insured for his or her "regular use" and is thereby excluded from coverage under the policy provision in question. In *Whaley v. Insurance Co.*, 259 N.C. 545, 131 S.E.2d 491 (1963), this Court held that coverage in such cases would depend upon the availability of the vehicle for use and the frequency of its use by the insured. Each case is to be decided upon its own facts and circumstances. In *Whaley*, the vehicle was available to the driver for both personal and business use, and he actually took full advantage of this availability on numerous occasions. This Court held that the car was indeed available

for Whaley's "regular use" and that the exclusion should apply. *See also Indiana Lumbermens Mut. Ins. Co. v. Unigard Indemnity Co.*, 76 N.C. App. 88, 331 S.E.2d 741 (1985) (no restrictions placed on use of vehicle and uninterrupted possession was sufficient to support the trial court's finding that the vehicle was furnished for regular use). To the same effect are *Gaddy v. Insurance Co.*, 32 N.C. App. 714, 233 S.E.2d 613 (1977); *Insurance Co. v. Bullock*, 21 N.C. App. 208, 203 S.E.2d 650 (1974); *Devine v. Casualty & Surety Co.*, 19 N.C. App. 198, 198 S.E.2d 471 (1973).

In contrast to the facts in the above cases, Dr. Warren's use of the automobile was limited to driving to and from the hospital, a very restricted use. The vehicle was not available for her regular use. She did not drive the car during the day for other business purposes nor did she make any other use whatsoever of the vehicle. In addition, her use of the vehicle was not exclusive nor was her possession of the vehicle exclusive. Other students used the vehicle during the same period of time that Dr. Warren was entitled to use the vehicle.

The use of the the word "regular" in the exclusion creates an ambiguity and such ambiguities must be construed against the insurance company. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E.2d 894. The American Heritage Dictionary of the English Language 1096 (1980) gives as one definition of "regular" the meaning "usual." Certainly, Dr. Warren's use of the vehicle was not the "usual" use of an automobile. Usually people use automobiles for such purposes as they may choose. Here, Dr. Warren's use of the motor vehicle was limited and certainly did not give her the right to use the vehicle in a usual or regular fashion.

Likewise, "regular" means "ordinary." Rodale, *The Synonym Finder* 1024 (1967). Certainly, the limited availability of the vehicle for restricted use by Dr. Warren was neither ordinary nor regular within the policy terms. This case is strikingly similar to *Central Security Mutual Insurance Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15 (Kansas 1984). In *DePinto*, the driver was a student nurse who, as a part of her training, was participating in a clinical program at outlying hospitals. She was furnished a van in which to transport herself and other nursing students to and from such hospitals. She did not have permission to use the van for personal errands or other purposes and did not so use the vehicle. The Kansas court noted that her use was not continuous, was not normal use

for all purposes, and was not an unlimited use. Thereupon, the court found that the "furnished for regular use" exclusion was not applicable in that case. In *DePinto*, the Kansas Supreme Court held that "regular use" was continuous use, uninterrupted normal use for all purposes without limitation as to use, and customary use as opposed to occasional or special use. I find the Kansas definition to be the applicable definition in North Carolina in the light of our holding in *Whaley*. When one looks at the availability of the vehicle for use and the actual frequency of its use, it is clear that Dr. Warren's use of the vehicle in this case was not continuous, uninterrupted, normal, or without limitation and was not the customary use as opposed to a special use of the vehicle. I find that the vehicle in this case was furnished for use limited as to time, route, purpose and possession. This conclusion is also supported by *Travelers Indemnity Co. v. Hudson*, 15 Ariz. App. 371, 488 P.2d 1008 (1971); *State Farm v. Townsend*, 361 N.W.2d 332 (Iowa Ct. App. 1984) and *Grace v. Hartford Accident and Indemnity Co.*, 324 F.Supp. 953 (N.D. Ga. 1970), *aff'd*, 440 F.2d 411 (5th Cir. 1971).

Finally, the use by Dr. Warren of the vehicle in this case does not violate the purpose for which insurance companies have inserted this exclusion in their policies. The insurance companies want to exclude vehicles used habitually by an insured without the payment of insurance premiums. The policy is to prevent a family or person from having two or more automobiles that are used interchangeably with only one automobile being insured. *Whaley v. Insurance Co.*, 259 N.C. 545, 131 S.E.2d 491. *See* 12A Couch on Insurance 2d § 45:1074 (1981 and Supp. 1985). The vehicle being furnished in this case does not violate the purposes for which the insurance company included the exclusion in the policy. In the event that insurance companies desire to be more specific in the meaning of their language in this exclusion, it is a simple matter for them to provide a definition of the term "regular use" in the definition section of their policy. Otherwise, we should reconcile this ambiguous question against the drafter, the insurance company, and allow coverage in this case. It is not up to the courts to fill in the gaps which the insurance company could have done had it chosen to do so in order to exclude insureds from policy coverage. I vote to affirm the decision of the Court of Appeals.